Argument in Congress, S. 1565, Mr. Dennis Perez, a criticizing attorney, presenting the argument involving Stephen Mayer. May I proceed? Your Honor, I have the double privilege this morning of also introducing Stephen Mayer to you this morning as representing Mr. Emilio Rivas, also a member of the University of Michigan Law School Federal Appellate Litigation Clinic. Thank you for allowing him to speak. Thank you. We've granted that motion. You may proceed. Good morning, and may it please the Court. My name is Stephen Mayer, and I represent the appellant Emilio Rivas. Before I begin, I ask to reserve three minutes for rebuttal. Plea agreements are an indispensable part of our criminal justice system, but as the Supreme Court noted in Santabello v. New York, such agreements depend on fairness and transparency. When a criminal defendant bargains away constitutional rights, the prosecution has a duty to execute the terms of a plea agreement in good faith, rather than executing end runs around those Today's case represents a troubling breakdown in the plea agreement system. Mr. Rivas gave up constitutional rights, but the deal he was promised by the government was an illusion. Now, there are two points I'd like to focus on today. The first is the government's breach by promising to recommend a safety valve adjustment, and then subsequently affirmatively arguing for a managerial role enhancement. Does it make a difference to you that the genesis of that argument arose because the PSR recommended that? Is that something that breaks the chain of the promise, so to speak? No, Your Honor. We don't believe it breaks the chain of the promise for the simple reason that the government, beyond letting the district court and the probation department make that the district court said it relied on to a great extent in reaching its ruling on the managerial enhancement that precluded that safety valve adjustment the government had promised to make. So if the government had said that... So when the PSR came out, you would have expected the government to say, no, no, we've already made a promise. I'm sorry, we won't put on any evidence and we won't agree with the PSR. Not quite, Your Honor. I wouldn't say that the government has a duty to affirmatively try and after they took the step of making that agreement in their plea agreement with Mr. Rebus that they wanted to recommend a safety valve adjustment, they should have at least stayed back from that determination and let the district court make an independent ruling. Well, let's walk through this. The government makes an agreement in which it says, we will recommend a safety valve adjustment if you meet the conditions. And it says one and two, it says including one and two. And I take it, I think that everybody says that the lawyer knew what safety valve required, which requires five things. So then PSR comes out. And I suppose the government could have objected to the PSR, but the government did not affirmatively promise that we know you're not a supervisor. So PSR comes out. Your folks object. The probation officer responds, so it's well laid out. And now it's before the judge. Under the rules, the burden is on the government. So is it your view the government should have in effect taken a dive and say, well, we know the PSR says this, but we're going to stand silent, and therefore we would automatically lose because the burden is on them, isn't it? Yes, Your Honor, the burden is on the government by a preponderance of the evidence. Once you have raised it, and you certainly raised it, you argued it in the objections. They're arguing against it. So there are responses to two components of your question. The first component is that the government didn't need to take a dive here, but the government had already taken itself out of the race when it stated that it intended to promise a safety valve adjustment. Now that takes me to the first component. Because it says intended to promise. It was we will promise if A, B, C, D, E. And at least one of those is now in serious contention. Maybe the government didn't know it at the time, but now it is in serious contention. So, Judge Boggs, the specific breach conduct is not about that term. The including term is in there. Mr. Rivas does not dispute that the including term is in there. The breach conduct is the government frustrating the purpose of the contract and violating its duty of good faith that this court's precedent in Monsevius and Lucci has essentially borrowed from contract law, that you don't try to defeat the occurrence of a condition precedent that you wrote into the contract to protect yourself. Do you have any evidence? You sort of say that this could be used to trick people, but do you have any evidence that they really did this? I mean, doesn't this happen in plea agreements all the time where you say, we will do X and Y if you have less than three criminal history points? And then it turns out they find you committed murder in Oregon 15 years ago, and they say, sorry, you've got more than three criminal history points. That's certainly conceivable, Judge. Okay, so how is this any different? Now, what we do know is that the facts upon which the government based its managerial role enhancement argument were known well before this plea agreement was breached. Now, we're not saying that the government necessarily was trying to trick someone. What we are contending is that the government probably didn't even think it was possible a low-level drug courier like this would get hit with a managerial role enhancement until probation brought it up, and then they took the burden on themselves to affirmatively argue for the argument probation initiated. Now, their plea agreement prior in time to that, based on facts they knew well before the PSR came out, that's what precluded them from trying to frustrate the purpose of the contract, from defeating this condition precedent to their obligation to Mr. Rivas. Okay, so just to try to draw a general principle here, you're saying that when the evidentiary facts, let's put it, were known in advance, then you should not be able to tell the court the truth? Certainly not, Your Honor. That's not Mr. Rivas' contention. The contention is that the government made a promise after they knew all the facts related to the managerial enhancement. And when they put in this term, the safety valve adjustment, that would indicate that they aren't going to try to defeat or make an end run around promising that safety valve or recommending that safety valve. Now, this wasn't a situation where we saw a defendant who committed a subsequent criminal act. It wasn't a situation where new facts came to light, which, as you alluded to, can happen all the time and can change a plea agreement. I see lots of plea agreements where it says, we believe that X or Y will be the guidelines range, but we know that it's up to the court. How is that any different from this when it turns out that the argument comes out differently? We don't believe that's actually different from this case. In this case, if there had been a clause saying, we'll let the district court make an independent determination, it wouldn't have been that different from an implied promise here that they're going to let the district court make an independent determination. The problem is we didn't have an independent determination. So you're saying, well, independent, of course it was independent. The court ultimately decided it after hearing full argument on both sides. Just to be clear, your narrowest point is at the point that the judge says, I've got this PSR recommendation, counsel or the defendant opposes that, what do you say, government? The government should have said, we stand mute. In the case where they have made a promise to the defendant that essentially takes that argument off the table for them, then yes, they should. Certainly not. The judge knew what was in the plea agreement, of course, right? Yes, Your Honor. So in the sense that if the judge thought that that was the interpretation of the agreement, he could have said, be quiet, I'm not going to listen to you because you promised it away. Was that argument made at the time, for example, when the government started to speak? Did whoever was counsel at that point say, wait a minute, they promised not to say anything? Unfortunately, trial counsel did not object to that point, and that was incorrect. That's why we have to satisfy the plain error standard, but counsel absolutely should have objected at that point in the trial when the government started affirmatively arguing for the managerial role. Now, we can satisfy plain error. We have United States v. Barnes and United States v. Swanberg that have analogous facts that state a plea agreement breached by the prosecution because it brings into bear the word of the United States government, affects the integrity of the judicial system, which is prong four of the plain error standard, and it also satisfies the third prong. So based on those two tests, that you have substantial rights affected under Barnes, Sanabello, and that you have the integrity of the justice system called into play, we do have the plain error standard being met in this case. So, yes, that is the crucial point in that trial. That objection should have occurred, and that's what we are trying to remedy now. The district court should not have heard that information, and this case should be remanded to a different district judge to hear the case and sentence again in accordance with the terms of the plea agreement. Now, in the interest of time, I would like to address our substantive point that the managerial role was not warranted in this case. Now, we can satisfy either the de novo standard or the clear error standard, depending on which this court applies. There's some uncertainty in this circuit. Now, we have a clear argument that the government did not meet its burden of showing a preponderance of the evidence on the managerial enhancement for two reasons. First, on the accomplice point, recruiting accomplices, which is so crucial to the managerial role enhancement. Each of the cases cited by the government in their briefing, all of those involved someone setting up drug transactions, organizing drug transactions, or hiring and paying a courier to take drugs to a buyer. Now, Mr. Rivas' conduct in this case doesn't even come close to meeting either Munoz, Plunk, or Williams, all three of the cases cited by the government. He was a simple courier. He wasn't organizing transactions. He wasn't taking or giving money, and both he and the alleged accomplice that he hired were both paid by people who were actually organizing the operation. But didn't he have some sort of managerial authority over this accomplice? Didn't he hire this accomplice to drive the truck from Texas to Tennessee and have some direction over this driver once they were in the truck and attempting to park it at a warehouse? Is that not enough to be determined to be a manager under the guidelines? Your Honor, it might be, but we unfortunately don't have those facts definitively found in this case by the district judge. There's conflicting information in the PSR that the district judge adopted. The probation officer paraphrased Mr. Rivas and said he said he hired this person, but when you look on the next page, that's on page 8, paraphrase. On page 9 of the PSR, they give the actual quotation from Mr. Rivas, and he said, I allowed someone to use my truck. And the district court never made a specific finding on whether there was hiring resolved any of that. They just accepted the PSR on its face. Beyond that, at the sentencing hearing when the district judge made statements, I mean, did anybody testify to the contrary on the hiring, Your Honor? Mr. Rivas definitely gave testimony to the contrary. There wasn't a definitive conclusion. He's what, I allowed him? That's right. His contention was that there were organizers of the operation, if I may answer your question, sir, there were organizers of the operation who gave him and Mr. Diaz, who was the alleged accomplice, directions. And all he did was allow the organizers to let Mr. Diaz drive his truck. And the PSR, once again, doesn't have a definitive finding on that. Thank you, Your Honors. I think you'll have your time for rebuttal. Your Honors, good morning. May it please the Court, my name is Daniel French. I represent the United States in this matter. First, with regards to the main issue in this case about whether the United States, I guess the argument is essentially we breached the plea agreement. I think it's important to first note what the defendant is not alleging. The defendant is not alleging that his plea was unknowing. He is not alleging that he didn't understand what the safety valve provision was, nor does he say that he didn't understand that you had to meet all five of these requirements. And, of course, his argument that the plea agreement was breached is significantly undermined by the fact that at the lower court level, there was no objection to the United States putting on this evidence. There was no objection to the United States. That's why we're on plain error. Defending the managerial role. But I think it also goes to his understanding of what the plea agreement was and what trial counsel's understanding of the agreement was. If trial counsel, along with the defendant, truly understood the plea agreement to mean what appellate counsel is arguing, then there would have been some statement at some point. Unless the trial counsel was just plainly incompetent and not objecting. Well, Your Honor, we've got to realize this. When the PSR came out and it stated that he did qualify as a leader, the lowest base of leader, the two-level enhancement, the United States filed a position in which it didn't object. Trial counsel then filed a position paper in which they not only objected to the enhancement, but they asserted facts which were not true. They asserted that he had no control over where the truck was going, that he didn't know where it was going. You've got to concede that this is pretty thin record. If the government can come in and say, anytime you've got somebody involved in moving drugs and one of them stands out back and waves the tractor trailer back up a little bit further, move forward, if that's managing, you've got everybody you want. Because everybody is going to fall prey to that. If that's the only fact we had, I would agree with the court. But the problem for Mr. Revis is those are not all the facts. As was in the PSR and as was produced at sentencing, Mr. Revis hired Mr. Figueredo Diaz to drive his own- How do you respond to the argument that he objected to that initial statement about how he was employed and said instead that I allowed him to drive my truck? He never objected to that. That's not true. What he's talking about, I guess, is their statement of acceptance, where Mr. Revis said that in the PSR when he took an acceptance statement from probation. He didn't object to paragraph 18 in the PSR, which explicitly states that he gave a confession after he was arrested and he admitted he hired Mr. Figueredo Diaz. He never contested that point at the sentencing or in the PSR. That's just simply not true. Your citation on that point is paragraph 18 and then page ID 1147 to 1149. Whose testimony is that? Chief, I believe it would be Joe Hoeing's testimony, I suppose, that testified that Mr. Figueredo- I mean, Mr. Revis admitted that he hired Mr. Figueredo Diaz after he was caught. He fled the scene. He was the only one that fled. I thought two people fled and then I don't- No, just one- well, another person- that's right, another person fled that they never caught. And then Mr. Revis fled and they found him hiding in a tree. And after they caught him, they asked him what was going on. He admitted that he hired Mr. Figueredo Diaz to drive the truck. He said Mr. Figueredo Diaz had no idea what was in the trailer, that he hired him to drive the truck. And, in fact, he was upset. Yeah, upset because there was more- There was more marijuana. Doesn't that question his managerial role if he had no idea how much he was running? No, Your Honor, I think it- well, first of all, I don't believe that. But the second point is, I think it supports his managerial role that he was the one, not his superior, he was the one that went out and picked Mr. Figueredo Diaz out and hired him. And you've got to think about- He didn't pay him, did he? We don't know if he paid him. I think he claims that he didn't pay him and there was no- The evidence was that a third party paid both Mr. Rivas and Mr.- I don't recall that, Your Honor. I don't recall that being- You don't recall that they were not- that Mr. Rivas said he did not pay the driver? I recall Mr. Rivas claiming that he did not pay the driver, but claiming that the $12,000 found in his tractor trailer that Mr. Figueredo Diaz drove to Memphis, he claimed that was his money, yes. Mr. Rivas claimed that was his money and then claimed that Mr. Figueredo Diaz had no knowledge of what was in the trailer. Of course, Mr. Figueredo Diaz has since pled guilty and been sentenced. So, of course, he knew what was in the trailer. How do we work our way through this? Well, I think- You can understand the objection here. He's given up constitutional rights. When he does it, he's led to believe and does believe that you are going to be sure that he gets the safety vows. That's kind of the quid pro quo. And I understand you're in the position of saying, well, the PSR came out later and told us this and we have a right to pursue that. But how do you work your way through this good faith concern that you negotiate a deal and someone gives up constitutional rights and then they get the benefit of that bargain? Well, Your Honor, I mean, the good faith deal also applies to the acceptance of responsibility provision of the plea agreement. And in that provision, we agree to recommend acceptance of responsibility agreement. But it also states that if we find out that he's committed any conduct, even before the plea agreement, that we think constitutes obstruction. So let's say the probation office finds something in all the reports and hits him with an obstruction enhancement. Well, he loses that too. And in this case, the government-this was not an 11C1C agreement. He was not guaranteed the safety vow. On his side, if he had wanted to be guaranteed it, he could have- He could have negotiated it. He could have taken the C1C. He could have negotiated any language in this plea agreement. This was a standard-this safety vow provision, I'm not going to sit there and say it's the best drafted paragraph that I've ever seen in a plea agreement. It should have listed all five or it should have just said you have to comply with the requirements and not listed any of them. This is just the standard provision that has been passed down through plea agreements. We don't even normally put it in every plea agreement unless the defense requests it. And in this case- And that's the issue that we're grappling with. Right. In this case- It was kind of a bargain for deal and you've got to-I think you have to concede in fairness that it is an issue to a defendant to give up a constitutional right for something that he expects. But your opponent would have to concede in fairness that it's an issue to the government if the PSR comes out and says, yes, we have a managerial role that you have a right to go forward. I'm just asking you how we wind our way through this so that everybody feels appropriately. I think, first of all, we start with the law. And the law is that we have to look to the plain terms of the agreement and we have to understand it as a reasonable person would understand it. And when you look at the word including in the provision and it says you have to comply, not that you have complied, but you have to comply including, we know that there are five other requirements. The defense knew there was five other requirements. Five total requirements. It's about not having a weapon. Correct. Not having a weapon. No threat. Somebody saw he had a weapon. Right. I mean, there were five requirements. This one requirement, probation found on their own. The United States did not initiate this argument. And after probation found that in the PSR, the defendant filed a position paper. And in the position paper, he asserted not only should it not apply, but he stated things that weren't simply true. He said he didn't know where it was going. He really tried to minimize his role. What did the government do in arguing against? They put on this, is it Honig? Hoeing. Joseph Hoeing. Hoeing. He was one of the case agents in the case. But probably he testified in open court to pretty much what he had told probation. Well, he never spoke to probation. The way it works in our district is we turn over our case file to probation. So he was just testifying from the case file. He was actually present and initiated this investigation. He had spoken. I mean, was he the guy who spoke to Figurado Diaz about, I mean, sorry, spoke to Revis about the hiring of Figurado? Yes, he did. Okay, so that's why it says that he was the one, then, who told probation. That's correct. Or his testimony was in. I'm saying that that's just the reiteration of why probation put it in the record. That's correct. Okay. That's correct. Did you do anything else other than, you know, make ordinary arguments? No. I mean, we put that testimony on. Counsel Cross examined him. And I think counsel, even in their argument to the court, defense counsel, said, yeah, he hired this guy or, yeah, he was responsible for this guy. But the argument essentially was he was taking orders from somebody, so that means he shouldn't get the enhancement. And that's just not the way to solve it. It puts it, you know, there is this, sometimes we have to thrash through, is he a leader, an organizer, a supervisor, or a manager? But they're all in the safety valve. So no matter how low you go on that chain. He got the lowest. I mean, he got the lowest form of it. I mean, he didn't get anything higher. We're not asserting that he was a leader or that he was an organizer. He was more of a manager and a supervisor. And going back to your Honor's original question about whether the record's thin, what we have to support that is Mr. Revis, and these are all facts in the record, he hired Mr. Figueredo Diaz as detailed in the report, which he didn't object to. He hired him to drive his truck. You know, this wasn't just some random truck he rented. This was his truck in his name. He then took Mr. Figueredo Diaz's car in Texas, drove himself to the airport with it. He then flew to Memphis on a one-way ticket, which is how the DEA got the tip. And then they intercepted him at the airport. They followed him to a restaurant in Memphis where he met Mr. Figueredo Diaz. He was the only one on the cell phone. He was the one that rode to the warehouse and supervised it. He's the one that told Mr. Figueredo Diaz where to go. And, of course, he's the one, along with this other unknown individual, he fled while Mr. Figueredo Diaz, of course, stayed stationary when the police told him to stop. TFO Hoeing, I keep saying TFO, Task Force Officer Hoeing, he testified that Mr. Rivas was the only one given instructions. He was the only one directing. He was the only one on the cell phone. And he said, based on his extensive training and experience, that showed that Mr. Rivas was exercising a supervisor role. You know, it's unfortunate that we're here on this language as though Mr. Rivas was confused about whether he was going to definitely get the safety valve. But when you look at the record and you look at the fact that he stood silent at the sentencing hearing, his counsel stood silent, there wasn't a misunderstanding about what this provision provided. And there wasn't a misunderstanding about whether the government could put on or defend the managerial enhancement when they alleged facts that were simply not true in objecting to it. And the government did have a duty to let the court know what the truth was. We couldn't just stand by and take a dive, as Judge Boggs said, when they were stating things that were simply not true. As to whether the enhancement should apply, I've already gone through the facts about that. I would submit we both agree, even though there's a dispute in the court, about what standard of review should apply. We both agree that clear error should apply. I think the defense conceded that in their brief, and that we agree as well, that clear error should apply as to whether the enhancement was appropriately given. The court, as I've already noted, went through those facts that I've cited. They specifically, the court in imposing the enhancement, noted that the defendant hired Mr. Figueroa Diaz to drive. He made the arrangements to meet up with the others, including the unknown individual and the third co-defendant. And he also managed the placement of the truck for the unloading. He was the one directing it to where it was supposed to be. Those facts alone, I would say, warrant the enhancement that was given. We cited Plunk also as our case that's similar to this. In the Plunk case, counsel's right. I guess the facts are a little bit different in that there was an ongoing relationship. But we cited that case more for what the court said, which is that recruiting individuals even for one time or on a temporary basis constitutes supervisory conduct warranting the enhancement. And if individuals direct another individual to act as a courier on their behalf, it is irrelevant whether the parties had a pre-existing tie. And I think that applies in this case. So unless the court has any additional questions. Thank you. Thank you. We have three minutes for rebuttal. Thank you, Your Honor. I'd like to start by clearing up a couple record citations that seem to get confused over the course of this argument. First, in response to Judge Strange's question about whether there was an admission that both people were being paid by a third party, I'd just like to give you the exact record cite. That was not a statement by Mr. Revis or counsel. It was an admission by Task Force Officer Joe Hoeing. That's at the sentencing transcript, record number 2941, page ID 1180. And he stated in response to cross-examination that both men were being paid by other individuals. I thought that's something worth knowing. In terms of this dispute about what Mr. Revis' admission was, it's really about this word hire that we have in the PSR on page 8. Government cited it correctly, paragraph 18. And that is a paraphrase of what he told officers what he did. It does use the word hire. Now, what I would direct your attention to is paragraph 26 on the next page of the PSR when we get a verbatim statement from Mr. Revis in which he states, I let someone use my truck. And that's reflected in the finding that the district court judge made at the sentencing hearing. Now, if you look there, the same record I cited you earlier, 2941, to page ID 1182, the district court judge echoes that, saying Revis did arrange for Diaz to drive his truck. We don't have any of this hiring language, which is really what the government is hanging its recruitment hat on for the managerial role enhancement. So with those clarifications, I'd like to go back to the contract interpretation. Counsel, just one thing to be clear. Paragraph 18 of page 8, as I read it, it's not referencing an interview with a probation officer. It's referencing what happened at the time of the arrest. Is that correct? Whereas paragraph 26 is what he said to the probation officer. Paragraph 18, first of all, you're right, Your Honor. Paragraph 18 is a paraphrase by the probation worker writing up the PSR. It's not an actual transcript of the interview. But the statement that is an actual transcription of quotation is from the PSR interview. So they are different points in time. I was making the point that it's a paraphrase. And when Hoeing testifies, does he use the word hire? I do not have a record citation for that. I've gone through it a number of times. We can look at it. But presumably, if I understood the back and forth right, Hoeing was the guy who was there when the arrest was made. So whatever he said in court would be the best version of that. With the lead DEA case agent, that's right. I don't have a citation. Okay. We can look at it. Go ahead. To briefly summarize, Your Honor, on that contract interpretation principle, the government said we should look at this as a reasonable person would. And the most basic principle of contract law is that when you enter into an agreement, you don't try to defeat or frustrate the purpose of that agreement. So we urge you to reverse and remand. But how is it the purpose? I suppose that's the question. Is the purpose of the agreement to get him the adjustment or is the purpose of the agreement to get him the adjustment if he meets the conditions? Well, Your Honor, you can't try to frustrate the occurrence of that condition precedent. Now, the government wrote in that condition precedent. It would protect them. But what they can't do is take that extra step to try to make sure the condition doesn't occur. Okay. Thank you, counsel. Thank you. The case will be submitted. Clerk may call the next case. May we say before you call the next case, thank you, Mr. Perez. Ms. Garza and Mr. Mayer both did an excellent job.  You should be proud. Thank you. That will be so submitted. You may call the next case.